**CONCERNED CITIZENS OF APPA-LACHIA, INC. and New Market Coal Company, Inc.**

**v.**

**Cecil D. ANDRUS, Secretary, Department of the Interior, and David C. Short, Director, Region II, Office of Surface Mining Reclamation and Enforcement.**

**Civ. No. 3–80–210.**

United States District Court, E. D. Tennessee, N. D.

June 12, 1980.

W. P. Boone Dougherty, Knoxville, Tenn., for plaintiffs.

Richard K. Harris, Asst. U. S. Atty., Robert S. More, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action for injunctive and declaratory relief against enforcement of the "Surface Mining Control and Reclamation Act of 1977," 30 U.S.C. §§ 1201 *et seq.* (herein cited as "the Act"). The plaintiffs contend the Act, the regulations under the Act, and the methods of enforcement by the Secretary of Interior violate the Fifth and Tenth Amendments to the federal constitution. A hearing has been held on plaintiffs' application for a temporary injunction against the enforcement of the Act. The Government has moved to dismiss the complaint.

Plaintiffs earnestly contend the reclamation and erosion control requirements of the Act, and the authority of field inspectors to issue cessation orders without prior notice or hearing are so onerous on surface mine operators as to constitute a taking of property without just compensation, in violation of the Fifth Amendment. Plaintiffs introduced proof at the temporary injunction hearing that the Act's reclamation requirements are very expensive and of questionable environmental value. Inferentially, smaller coal operators would find the high expense of reclamation prohibitive, thus forcing them out of business. Plaintiffs rely on *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), to support their contention that these circumstances, if proven, would constitute a taking of property without just compensation.

In *Pennsylvania Coal Co.,* Mr. Justice Holmes stated that "taking" questions under the Fifth Amendment depended "upon the particular facts." In *Pennsylvania Coal Co.,* the Supreme Court ruled that the state of Pennsylvania's statute prohibiting surface mining of coal in certain places constituted a taking. However, Mr. Justice Holmes, writing for the majority, made the key observation that the Pennsylvania statute was not designed to further substantial public interests, but was merely designed to protect the rights of persons or municipali-

ties who had been deeded the surface rights only of the land in question.

"The extent of the public interest is shown by the statute to be limited, since the statute ordinarily does not apply to land when the surface is owned by the owner of the coal." 260 U.S. at 413–414, 43 S.Ct. at 159.

On the other hand, in a more recent Supreme Court opinion, Mr. Justice Brennan said:

"In instances in which a state tribunal reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land, this court has upheld land-use regulation that destroyed or adversely affected recognized real property interests." *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

In the *Penn Central Transportation Co.* case, Mr. Justice Brennan reiterated that each "taking" case hinged on its own peculiar facts and listed some of the factors to be considered in determining whether a "taking" has occurred. In addition to the economic impact of a government regulation, the Court must consider

". . . the character of the governmental action. A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." 438 U.S. at 124, 98 S.Ct. at 2659.

The Act now under consideration differs from the Pennsylvania statute struck down in *Pennsylvania Coal Co.* in two significant ways. First, plaintiffs do not and cannot allege that the economic value of their real property interests has been totally destroyed by the Act. Plaintiffs' own argument as to alternative uses of the property contradicts this. All plaintiffs allege is that the Act's requirements are extremely expensive. The reclamation requirements are not physically impossible to comply with, nor would they be economically prohibitive to an operator with sufficient capital. The Congress, in exercising its own legitimate fact-finding function, and in weighing the great environmental harm caused by unreclaimed strip mining operations against the expense of reclamation, has declared the Act's requirements "reasonable," "appropriate," and "necessary." 30 U.S.C. § 1201(c) and (e).

Secondly, the Act is designed to further a substantial public interest, the protection of the environment. Surface mining of coal, particularly in the mountainous terrain of East Tennessee, causes extreme environmental harm according to the Congressional findings. 30 U.S.C. § 1201(c). This harm in turn significantly harms the public. The Act is specifically addressed to that harm. 30 U.S.C. § 1202(a).

Rather than being characterized as a "physical invasion" by the Government, the regulatory scheme of the Act is a conscious "adjusting" of the benefits and burdens of economic life to promote the common good on the part of Congress. *See Penn Central Transportation Co., supra.* The allegations that the Act's reclamation requirements are prohibitively expensive and environmentally unsound would involve this Court in reviewing the advisability of Congressional choices in addressing a major social problem. This Court does not sit to consider the advisability or wisdom of legislation passed by Congress. It is enough to say that Congress found significant environmental and public harm that needed to be remedied by federal regulation. The Court does not read plaintiffs' complaint as disputing these findings. Plaintiffs merely challenge the methods adopted to remedy the situation. In that context, the imposition of additional expense to coal operators does not constitute a taking of property within the meaning of the Fifth Amendment.

■ The plaintiffs further contend that the authority to issue cessation orders without prior notice and hearing, along with the capricious attitudes toward plaintiffs allegedly manifested by federal surface mine inspectors, violate their procedural due process rights under the Fifth Amendment.

Although notice and hearing are fundamental due process rights, the Supreme Court has never said these procedural protections had to be granted in every instance prior to a governmental deprivation. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In considering the due process claim, it is important to remember the context of the Act. The Government does not physically take control of private property, which was the circumstance at issue in *Fuentes v. Shevin, supra.* Rather, the Government here simply orders coal mine operators to cease activity perceived to create an "imminent danger to the health and safety of the public" or to "cause significant, imminent environmental harm." 30 U.S.C. § 1271(a)(2). The former of these phrases, incidentally, is given a very specific definition at 30 U.S.C. § 1291(8). A public hearing at or near the minesite is required within 30 days of the issuance of the cessation order, 30 U.S.C. § 1271(a)(5) and the results of this hearing are subject to full administrative and judicial review. 30 U.S.C. § 1275 and § 1276.

This statutory hearing and review scheme represents a deliberate choice by Congress in weighing the competing interests of protecting public safety and the environment against the economic rights of surface mine operators to continue their operations. The due process clause requires only that the operators be given notice and a hearing, if not before a cessation order, then shortly after such an order. The Act meets that requirement. *In Re Surface Mining Regulation Litigation*, 456 F.Supp. 1301 (D.D.C. 1978).

Plaintiffs further contend that the reclamation requirements of the Act are economically prohibitive in a mountainous terrain but not so in flatter areas, violating their right to equal protection. This claim is without merit. The complaint does not allege any kind of suspect classification such as race, nor does it allege any uneven curtailment of a fundamental constitutional interest such as free speech. Under such circumstances, the Supreme Court will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational. *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *See also, Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Maintaining the original contour of the mountains covering coal deposits is directly and rationally related to the legitimate government purpose of protecting the environment. There is no equal protection problem with the Act. *Virginia Surface Mining & Reclamation Ass'n v. Andrus*, 483 F.Supp. 425 (W.D.Va.1980).

Finally, plaintiffs contend the Act infringes on the "reserved powers" provision of the Tenth Amendment. In *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1975), the Supreme Court ruled the Congress could not constitutionally require state governments, as employers, to comply with the Fair Labor Standards Act.

"The (Tenth) Amendment expressly declares the constitutional policy that Congress may not exercise power in a fashion that impairs the States' integrity or their ability to function effectively in a federal system." *Fry v. United States*, 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 1795 n. 7, 44 L.Ed.2d 363.

However, Mr. Justice Rehnquist, in the *National League of Cities* case made it clear the Tenth Amendment limitation on congressional power does not limit regulation of private enterprises:

"Congressional power over areas of private endeavor, even when its exercise may pre-empt express state law determinations contrary to the result which has commended itself to the collective wisdom of Congress, has been held to be limited only by the requirement that 'the means chosen by Congress must be reasonably adopted to the end permitted by the Constitution.'" 426 U.S. at 840, 96 S.Ct. at 2469.

Under the Act, the states are permitted to participate in enforcement if they desire. 30 U.S.C. § 1253. The Act in no way requires any state to adopt any policy, oper-

ate any program or bear any expense against its will. The Congressional purpose of protecting the environment from dangers arising in the course of nationally significant commercial activity is well within the Commerce Clause power. The means used to achieve that purpose are directly and rationally related to activity subject to Congressional regulation under the Commerce Clause. *See Heart of Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). The Act does not violate the Tenth Amendment.

From the foregoing legal conclusions, the Court considers plaintiffs' likelihood of success to be nonexistent. The Court is of the opinion that the law as outlined herein precludes the need for any more testimony or proof. Plaintiffs' entire case amounts to a claim that the Act is ill-advised and unreasonable. The Court can only decide whether Congress, under the Constitution, has the power to pass the law it did, ill-advised or not. *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). The Court concludes that Congress does have such power.

Accordingly, it is ORDERED that the application for temporary injunctive relief be, and the same hereby is, denied. It is further ORDERED that this case be, and the same hereby is, dismissed.